IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CANDACE L. BOITEL                                                    PLAINTIFF

v.                              Civil No. 11-2161

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Candace Boitel, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims

for a period of disability, disability insurance benefits ("DIB"), and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C.

§ 405(g).-

## I.    Procedural Background:

The plaintiff filed her applications for DIB and SSI on December 13, 2007, alleging disability

since October 2008[1], due to bipolar disorder, body aches, panic attacks, Hepatitis C, and renal failure.

The Commissioner denied Plaintiff's application initially and on reconsideration.  Tr. 71-78, 239-245.

An administrative hearing was held on February 12, 2010.  Tr. 25-62.  Plaintiff was present and

represented by counsel.

At the time of the hearing, Plaintiff was 29 years old and possessed the equivalent of a high

school education.  Tr. 22.  She had completed two years of beauty school, but never obtained her license.

Tr. 163.  Plaintiff had past relevant work experience fast food cashier and industrial worker.  Tr. 250,

260.  It is noted, however, that Plaintiff's work history is sporadic.

---

[1]Plaintiff originally alleged an onset date of September 19, 2007, however, due to her continued work
at Cargill and her drug use, at the hearing, she agreed to amend her onset date.  Tr. 61.

On August 3, 2010, the ALJ found Plaintiff's bipolar and substance abuse disorders were severe impairments, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 13-15. After partially discrediting Plaintiff's subjective complaints, she determined Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: the Plaintiff is only able to perform work where the complexity of the tasks is learned by rote with few variables and little required judgment and where the supervision required is simple, direct, and concrete. Tr. 15-18. Utilizing the Medical-Vocational Guidelines ("the Grids"), the ALJ determined Plaintiff was not disabled. Tr. 18-19.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 11, 2011. Tr. 1-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 13.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings

AO72A
(Rev. 8/82)

of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.**   **Discussion:**

Of particular concern to the undersigned is the ALJ's assessment of Plaintiff's mental impairments.  The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996).  Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding

3

that disability based on a mental disorder has ceased.  *Id*.  Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse."  *Id.*  Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate.  *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999).  This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

The ALJ contends that Plaintiff's bipolar disorder is well controlled by medication and that her symptoms are exacerbated by situational stressors and a failure to take her medication.  She notes that Plaintiff was admitted to the hospital on at least three separate occasions (*i.e.*, January 2007, October 2007, and April 2009) for suicide attempts, but attempts to dismiss them stating each was precipitated by a confrontation with family members.  Further, in each instance, she contends that Plaintiff was stabilized on medication and recovered quickly.  The ALJ then goes on to state that Plaintiff was consistently assigned global assessment of functioning ("GAF") scores of 50-60, which is indicative of only moderate symptoms.  And, she contends that Dr. Richard Owings, Plaintiff's treating doctor, noted that Plaintiff was aware that she needed to rid herself of the situational stressors and comply with her medication.

Although her conclusions could be used to bolster a decision in a case involving other psychiatric disorders, the ALJ's treatment of Plaintiff's bipolar disorder is quite neglectful for several important reasons.  First, the conclusion that Plaintiff's suicide attempts were due to situational factors, namely an abusive marriage and strained familial relationships, in no way negates the severity of Plaintiff's bipolar disorder.  Research shows that patients suffering from bipolar disorder are in a higher

4

risk category for suicide attempts than are individuals suffering from other mental disorders.  P. Lopez, et al., *Suicide Attempts in Bipolar Patients*, 62 J. CLIN PSYCHIATRY, December 2001, at 963-966.  The higher prevalence of suicide attempts among bipolar patients has been related to drug abuse, a family history of affective disorders, and severe depressive episodes.  *Id*.  Given that the hallmark of bipolar disorder is the potential for rapid swings between manic and depressive episodes and that a disagreement or argument with a family member would likely upset even an individual not suffering from bipolar disorder, it seems reasonable that this same situation could send a bipolar patient into a major depressive episode.  *See* American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV TEXT REVISION ("DSM IV-TR") 383, 392 (4th ed. 200).  Therefore, the undersigned is of the belief that Plaintiff's bipolar disorder contributed to her suicide attempts.  The extent of the impact, however, is a question that should be posed to a treating source.

The ALJ also contends that Plaintiff's bipolar disorder was well controlled via medication, when Plaintiff took the medication as prescribed.  However, once again, the ALJ failed to take note of one of the most important symptoms associated with bipolar disorder.  It is not uncommon for patients suffering from bipolar disorder and/or schizophrenia to discontinue their medications at will.  *See*  DSM IV-TR 304, 321, 359; Charolette E. Grayson, *Bipolar Disorder: Taking Your Bipolar Medication*, *at* www.webmd.com; Agnes Hatfield, *Medication Non-Compliance*, *at* www.schizophrenia.com.  According to the DSM, patients suffering from schizophrenia, schizoaffective disorder, and bipolar disorder also suffer from anosognosia, or poor insight.  DSM IV-TR 304, 321, 359 (4th ed. 2000).  "Evidence suggests that poor insight is a manifestation of the illness, rather than a coping strategy. . . .  This symptom predisposes the individual to noncompliance with treatment and has been found to be predictive of higher relapse rates, increased number of involuntary hospital admissions, poorer psychosocial functioning, and a poorer course of illness."  *Id*.  Again an issue that should have been

5

addressed by a treating physician, but should have also been taken this consideration prior to rendering the ALJ's opinion.

The ALJ also notes that Plaintiff reportedly abused prescription opioids and sedatives until May 2008. She then goes on to find that Plaintiff's bipolar disorder exists independent of her substance abuse. Substance abuse and anxiety disorders are frequently associated with bipolar disorder. At least one major study has shown that "more than forty-two percent of patients meeting the criteria for a major depressive disorder (including bipolar disorder) had lifetime histories of substance abuse." *Id*. at 1345. Yet another study has revealed that "the frequency of substance abuse was thirty-nine percent in adolescents who had symptoms of bipolar disorder." *Id*. Thus, the fact that substance abuse disorder aggravates an individual's bipolar disorder does not negate the potential for the mental disorder to be found to be disabling. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (citing cases from other circuits holding the same).

And, finally, the ALJ's failure to call a vocational expert to testify regarding the presence of jobs that exist in significant numbers in the national economy also necessitates remand. In *Wheeler v. Sullivan*, the United States Court of Appeals for the Eighth Circuit concluded that because the Plaintiff suffered from a severe mental impairment, the ALJ must use vocational expert testimony or other similar evidence in order to meet his burden of showing the existence of jobs in the national economy that the Plaintiff is capable of performing. 888 F. 2d 1233, 1238 (8th Cir. 1989) (if claimant suffers from severe mental impairment but not listed impairment and claimant cannot return to past relevant work, ALJ must use VE testimony or other similar evidence to show jobs exist that claimant can perform); *Vincent v. Apfel*, 264 F.3d 767, 769-770 (8th Cir. 2001) (applying *Wheeler*). The Government contends that this was not necessary because the ALJ properly discredited Plaintiff's subjective complaints, so use of the Grids was proper. *Reynolds v. Chater*, 82 F.3d 254, 258-259 (8th Cir. 1996). However, as discussed above, the ALJ improperly dismissed Plaintiff's subjective complaints concerning her bipolar disorder.

6

Further, because she properly concluded that Plaintiff's bipolar disorder constituted a severe impairment, she was obligated to call a vocation expert to assist in determining the availability of work for an individual with Plaintiff's limitations.

Accordingly, because the ALJ failed to properly consider Plaintiff's diagnosis of bipolar, we believe remand is necessary to allow the ALJ to do so.  On remand, the ALJ is also directed to call a vocational expert to testify regarding the availability of work the Plaintiff could perform in spite of her physical and mental limitations.

IV.     **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 13th day of August 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE

7

**AO72A**
**(Rev. 8/82)**